THE MARY LORD.[1]

CARSON *v.* THE MARY LORD.

*(District Court, D. Maine. June 16, 1885.)*

COLLISION—SAILING VESSELS—ABSENCE OF SIDE LIGHT.

The schooner R., while sailing on a course E. ½ N., collided with the schooner M. L., the course of the latter vessel being W. Each vessel was making about seven knots. The wind was free and from N. The M. L. struck the R. on her starboard side, just forward of the mainmast. Just before the collision the helm of the M. L. was ported. This was the only material change of course made by her. The R. luffed shortly after first sighting the M. L.; the latter vessel being at the time at a considerable distance, and bearing about one-half a point on her starboard bow. The R. subsequently luffed a second time, and was up in the wind at the time of the collision. The red light of the M. L. was not seen by the R. at any time, and its absence induced the R. to suppose that the M. L. was passing across her course to the S. of W., instead of on a line parallel with it. *Held,* that the evidence indicates that the red light of the M. L. was not burning, and that its absence misled and deceived the R., and was the cause of the collision; that, as the green light only of the M. L. was burning, it was reasonable for the R. to suppose that the M. L. was a crossing vessel, and the maneuver of the former, under these circumstances, was justifiable.

In Admiralty.

*Strout, Gage & Strout* and *Edward S. Dodge,* for libelant.

*Strout & Holmes,* for respondents.

WEBB, J. On the morning of November 8, 1883, between 12 and 1 o'clock, at a point about five miles south of Watch Hill Light, in Block Island channel, a collision occurred between the schooner Regina and the Mary Lord. The Regina, which was loaded with coal, and bound from New York to St. John, New Brunswick, was so injured that she instantly sunk. The Mary Lord, having on board a cargo of spruce lumber under and on deck, filled, but from the nature of her cargo was kept afloat, and the weather being favorable was

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

got into New London. The parties agree that the lights of the Regina were set and burning brightly; that the night was clear, the sea smooth, and the wind fresh; that each vessel was running from seven to eight knots an hour; that the Mary Lord struck the Regina on her starboard side, just forward of the mainmast, coming into her at about a right angle, and sunk her. Upon all other matters, there is much contradictory evidence. The time of the collision is stated variously at from 10 or 15 minutes to 30 minutes or more past 12 o'clock. The witnesses for the libelant give the wind at the time as N., while the claimants' witnesses say it was N. W. by N. or N. W. Nearly all the witnesses give the wind as N., or with a very little westerly variation from that point till after 12 o'clock. Capt. Walls, master of the schooner Ida Belle Torry, who hailed the Mary Lord, and inquired if she needed assistance, sometime after the collision, says that up to about 15 minutes past 12 he had the wind from N., when it changed suddenly to N. W. The signal station record, kept at Block island, states the wind N. all of the 7th, and till 7 A. M. of the 8th. In view of all the evidence, the conclusion seems to me unavoidable that for some time later than 12 o'clock the wind was N. The course of the Regina was E. ½ N.; that of the Mary Lord was W.

The precise time of the collision is somewhat uncertain. The direct evidence in regard to it is only the judgment of the witnesses. No one pretends to have noted the time by any clock. But, taking into consideration the incidents on board both vessels, and the time of Capt. Walls' hailing and offering assistance, I think it quite certain it could not have been later than 15 minutes past 12. I am also satisfied that both vessels were then, and for considerable time before had been, running free with the wind from N. They were thus approaching each other, end on, or nearly end on, and the helm of each should have been put to port, under the requirement of the eighteenth sailing rule. But this duty rests only on those who know or ought to know the way the vessels are approaching. The lights directed by statute are for the purpose of giving to the vigilant and attentive necessary information to govern them in the navigation of their own vessel. The absence of lights will not excuse neglect of duty, when, by the exercise of proper care, the position and direction of an approaching vessel might otherwise be seasonably known. In this case the master of the Regina was on the lookout, and an experienced and competent seaman had the wheel.

The testimony of the lookout is that he first discovered the green light of the Mary Lord about one-half a point on his starboard bow, and about half a mile distant, and that at once he passed over to leeward side, and took his position where he could carefully watch it, and never removed his eyes from it till the collision; that at no time was any red light visible on the Mary Lord. The man at the wheel says that very soon after he had taken it the captain gave him the order to luff, and he put his helm to starboard, and the schooner

came up a point or more, and then, without orders, he steadied, and soon undertook to return to his course, but was at once directed not to let the vessel fall off, and to keep his luff a little more.    The master testifies that he gave these orders in consequence of seeing the green light to the leeward, and that his own green light might be opened more to the other vessel, which he supposed—and was warranted in supposing if he saw the light as he testifies—was passing across his course to S. of W.   He thought that the green light he was watching apparently approached him more than it ought, and gave the second order to luff in consequence; that he did not and could not discern the vessel bearing this green light until she was very near him, and heading directly on him, when he gave the order to hard down the wheel, which was at once obeyed, and the Regina shot up into the wind and her sails lifted.   In his opinion the vessels would still have gone clear, but that, at the moment when his helm was put hard a-starboard, the helm of the Mary Lord was ported, and she at the same time came up, following the Regina, and striking her as described.   It is evident, on the assumption that the light of the Mary Lord was seen as thus stated, the orders on board the Regina were correct.

The lookout of the Mary Lord, at the time of the collision, was on his first voyage, and had been on board only two or three days.   His previous experience was entirely foreign to nautical affairs.   He and the second mate, who is a son of the master, both say that they took pains to look at their own lights every time they stepped from one side of the deck to the other, and that both were constantly burning up to and after the collision.   This extreme vigilance in regard to their lights, on the part of an experienced seaman, as well as on that of a person at sea for the first time in his life, is not credible.   Moreover, if the lights were placed and protected by screens, as they ought to have been, it is questionable if either of these witnesses could have seen them as they have testified.   It is admitted that that red light had, once at least, on a former occasion, gone out.   It is also proved that on this night, some time after the collision, it was out, and was taken into the cabin and relighted.   One of the crew of the Mary Lord testifies that, with a heavy wind and slack rigging, it would go out, and admits that he told one of the libelant's witnesses that it had sprung open.   Nearly all the witnesses of the claimants admit, that very soon after the collision, some say as soon as he got on their vessel, the captain of the Regina charged that they had no red light, and though several say they went to look, and found it burning, not one of them called the complaining master's attention to the fact.

On the other side, the master of the Regina swears positively that it was not visible to him at any time before the collision, although he was on the lookout at a proper station; that after the collision, and when on board the Mary Lord, he went forward, stepped up on the forerigging so as to look, at a distance of not more than two feet, upon

the lantern which was sitting properly in its box, and no light was then burning. The mate of the Regina, who was filling his pipe in the cabin, close by the door, says he heard the order "hard a-starboard," and instantly stepped to the deck, and looked at the Mary Lord as she was coming into them, and especially looked for the light, and could see none. All the navigation of the Regina was inconsistent with any theory of that light being visible. The testimony of some of the claimants' witnesses is weakened materially by conflicting statements. Evidence is offered that the man at the wheel has given an account of the collision totally different from that which he has given as a witness. Another volunteered statements in writing quite in harmony with the statements of the libelant's witnesses, and at the trial declared those statements to be false, and to have been given under the prompting of malice and revenge. Witnesses whose testimony is thus attacked, giving evidence in itself that conflicts with probability, and is also directly contradicted by others who are unimpeached, cannot be taken as safe guides.

That the red light of the Mary Lord was not burning, I think is established, and its absence explains why the lookout of the Regina did not discover her before she had approached within half a mile on a night admitted to have been clear starlight. The courses on which the vessels were sailing—one E. $\frac{1}{2}$ N., and the other due W.—show that for a time not long before the collision the Regina was slightly to the leeward of the Mary Lord, and all that time was in no position to see the green light, which would open to her only when the lines of approach crossed. The witnesses from the crew of the Mary Lord say they saw the Regina at the leeward, showing her red light, from one to two miles distant, and then they saw both of her lights, which is as they should have been seen. It is equally plain that when the green light was first seen by the master of the Regina, his schooner had got to the windward of the other, and from that moment he took all the precautions incumbent on him, unless it appears that he saw, or ought to have seen, the Mary Lord, notwithstanding she had no red light, in season to take further measures to avoid danger.

He testifies that he kept constant watch of the green light, from the instant he described it till the collision; that, as soon as he saw it, he gave orders that would carry him further away, out of danger; that when he found that the light still seemed to draw near instead of receding, he repeated the order for further divergence; that as soon as he could discern the vessel coming towards him, so as to know how she was approaching, he ordered his wheel hard down. The man at the wheel corroborates these statements, and says the orders were strictly obeyed. Both testified that they heard on board the Mary Lord the order "hard a-port." There is no reason for doubting these statements in respect to what took place on the Regina.

The mate of the Mary Lord and the man at her wheel deny that her wheel was ported, and that any order to port was given. They

are positive in their statements that the wheel was not moved from 12 o'clock to the time of the collision. They say they were running close-hauled all the time, with the wind N. W. by N. In these and many other particulars I do not find them trustworthy. All the indications are that, with or without orders, the helm of the Mary Lord was ported immediately before the collision. It is not improbable that it was put to port slightly when the light of the Regina was first seen. The want of a red light was primarily the whole cause of the collision. The other vessel was deceived and misled by this failure to show that light. The course adopted by those who only saw a green light was without fault. That course is confirmed by the evidence of the opposing witnesses, even when they affirm that their red light was burning. That the collision was finally brought about by the wheel of the Mary Lord being put to port I cannot doubt. The fault, then, being wholly on the part of the vessel libeled, there must be a decree accordingly.

Decree for libelant; an assessor to be appointed, to determine amount of damage.[1]

